1  ANDREW S. CLARE (SBN 050289)          RICK SHACKELFORD (SBN 151262)
   aclare@loeb.com                        shackelfordr@gtlaw.com
2  MARK D. CAMPBELL (SBN 180528)         DANIELL NEWMAN (SBN 242834)
   mcampbell@loeb.com                     newmandk@gtlaw.com
3  LOEB & LOEB LLP                        GREENBERG TRAURIG LLP
   10100 Santa Monica Blvd., Suite 2200   2450 Colorado Avenue, Suite 400E
4  Los Angeles, California 90067-4120     Santa Monica, CA  90404
   Telephone:  310-282-2000               Telephone:   310-586-7700
5  Facsimile:  310-282-2200               Facsimile:   310-586-7800

6  CHRISTOPHER VAN GUNDY                  Attorneys for Defendant
   (SBN 152359)                           WELCH FOODS, INC.
7  cvangundy@roll.com
   GARY SEDLIK (SBN 181192)
8  gsedlik@roll.com
   SOPHIE N. FROELICH (SBN 213194)
9  sfroelich@roll.com
   ROLL LAW GROUP P.C.
10 11444 West Olympic Blvd, 5th Floor
   Los Angeles, California 90064-1557
11 Telephone:  310-966-8400
   Facsimile:   310-966-8810
12
   Attorneys for Plaintiff
13 POM WONDERFUL LLC

14                    UNITED STATES DISTRICT COURT

15                   CENTRAL DISTRICT OF CALIFORNIA

16 POM WONDERFUL LLC,            ) Case No. CV-09-00567 AHM (AGRx)
                                 )
17              Plaintiff,       ) **DISCOVERY MATTER**
                                 )
18        v.                     ) **JOINT STATUS REPORT**
                                 ) **REGARDING DEPOSITION OF**
19 WELCH FOODS, INC., et al.,    ) **WELCH'S PRESIDENT**
                                 )
20              Defendants.      ) **[Referred to Magistrate Judge**
                                 ) **Alicia G. Rosenberg]**
21                               )
                                 ) Hearing:
22                               )   Date:      TBD
                                 )   Time:      TBD
23                               )   Place:     TBD
                                 )
24                               ) Discovery Cutoff:        May 24, 2010
                                 ) Depo. Discovery Cutoff: June 7, 2010
25                               ) Pretrial conference:     August 16, 2010
                                 ) Trial date:              August 31, 2010
26                               )
                                 )
27                               )
                                 )
28 _____)

                                           POM WONDERFULL LLC AND WELCH
   {039349.1}                              FOODS, INC'S JOINT STATUS REPORT

## THE STATEMENT OF POM WONDERFUL LLC

### I.    INTRODUCTION

By this motion, Pom seeks to depose Welch's President and CEO Brad Irwin. Welch's has objected to the taking of Mr. Irwin's deposition on the basis of the "apex rule".

However, the "apex rule" was designed to protect a company's CEO from deposition *only* where the CEO deposition is being used as a tool to harass the opposing side in litigation.  Here, that is **_not_** the case.

Pom has diligently pursued discovery from all of the relevant witnesses disclosed as "marketing" and "product development" witnesses for the White Grape Pomegranate product.  Yet to this day, Pom *still* has not been able to uncover any information regarding Welch's intentions in bringing a product to market that was named "White Grape Pomegranate", but actually contained only a trace amount of pomegranate and far more apple juice.  Pom has genuine reasons to depose CEO Brad Irwin as a witness with first-hand information vital to the prosecution of the case.  Welch's has made no showing of "good cause" that would be necessary to obtain an order blocking the deposition.  Therefore, the deposition of Mr. Irwin should proceed forthwith.

### II.   BACKGROUND

In this Lanham Act case, Plaintiff Pom Wonderful, LLC ("Pom") has diligently and comprehensively attempted to discover the motivation of Defendant Welch's Foods, Inc. ("Welch's) in naming and marketing the subject juice product as "White Grape Pomegranate", when in fact the product actually contains only a miniscule amount of pomegranate juice and would *far* more naturally and aptly be named "White Grape Apple" or "Apple White Grape".  **_No_** witnesses for Welch's admit to having any information bearing on this crucial corporate decision.

/ / /

/ / /

1    Accordingly, on May 5, 2010, Pom noticed the deposition of Welch's

2    President and CEO, Brad Irwin, as he is truly the most likely person (who has not

3    yet been deposed) to possess this information.  Welch's objected to this deposition

4    notice on the ground that this was an "apex deposition".  Also on May 5, 2010, Pom

5    served an amended Rule 30(b)(6) deposition notice requesting that Welch's produce

6    the person(s) most knowledgeable to testify regarding certain aspects of its recently-

7    introduced "Blueberry Pomegranate Concord Grape" juice product. (Exhibit "B" to

8    Declaration of Christopher Van Gundy.)  Welch's objected to producing any

9    designee regarding these categories.  At the May 7, 2010 discovery conference with

10   the Court, it was ordered that the parties prepare a Joint Status Report regarding

11   these issues on or before May 17, 2010.

12   **III.   ARGUMENT**

13

14       **A.    THERE IS NO GOOD CAUSE TO IMMUNIZE WELCH'S CEO
             FROM BEING DEPOSED ABOUT MATTERS WITHIN HIS
15           OWN FIRST-HAND KNOWLEDGE.**

16       A court may issue a protective order *only* after the moving party demonstrates

17   that good cause exists for such an order.  Fed.R.Civ.P. 26(c).

18       In a deposition situation, the party seeking to prevent the deposition (here,

19   Welch's) has the burden of showing a particular need for protection under that rule.

20   A court may issue orders protecting a party from being deposed where necessary "to

21   protect a party or person from annoyance, embarrassment, oppression, or undue

22   burden or expense." Id. "Broad allegations of harm, unsubstantiated by specific

23   examples or articulated reasoning, do not satisfy the Rule 26(c) test." Beckman

24   Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 476 (9th Cir.1992) (quoting Cipollone v.

25   Ligget Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)).

26       A party seeking to prevent a deposition carries a heavy burden to show why

27   discovery should be denied.  A mere *claim* of lack of knowledge on the part of a

28   high corporate officer does not provide sufficient grounds for a protective order.

POM WONDERFULL LLC AND WELCH
FOODS, INC'S JOINT STATUS REPORT

{039349.1}

1  Digital Equipment Corp. v. System Industries, Inc., 108 F.R.D. 742, 744

2  (D.Mass.1986).  On the other hand, "courts are sometimes willing to protect high-

3  level corporate officers from depositions when the officer has no first-hand

4  knowledge of the facts of the case or where the officer's testimony would be

5  repetitive." First United Methodist Church of San Jose v. Atl. Mut. Ins. Co., 1995

6  WL 566026, at *2 (N.D.Cal.1995).  Courts generally refuse to allow the immediate

7  deposition of a high level executive *before* the testimony of lower level employees

8  with more intimate knowledge of the case has been secured. *See* Salter v. Upjohn,

9  593 F.2d 649, 651 (5th Cir.1979) (granting protective order for executive where

10 plaintiff had sought to depose the president of the company before deposing lower

11 level executives); Baine v. General Motors Corp., 141 F.R.D. 332 (M.D.Ala.1991)

12 (granting protective order for Vice President of General Motors where plaintiff had

13 failed first to depose lower level employees).

14      As will be shown below, in this case Welch's generalized claims that its CEO

15 should be immunized from having to submit to an "apex deposition".  There is

16 reason to believe Mr. Irwin *does* have first-hand knowledge of facts relevant to this

17 case and Welch's objections do not rise to the level of "good cause" for issuance of

18 a protective order.

19      **B.    NONE OF WELCH'S WITNESSES TO DATE HAVE BEEN**

20          **ABLE TO ANSWER VERY BASIC QUESTIONS ABOUT THE**
           **MARKETING OF THE WHITE GRAPE POMEGRANATE**

21          **PRODUCT.**

22      Here, in complete contrast to Salter and Baine, Pom has been completely *shut*

23 *down* in its prior attempts to obtain from lower-level witnesses the information it

24 needs to prove its false advertising case.  This Lanham Act case requires proof of

25 intention on the part of Welch's in selecting the brand name "White Grape

26 Pomegranate" for its product even though it contains just a trace amount of

27 pomegranate and (most likely) a far larger amount of apple juice.  Also at issue is

28 / / /

1  Welch's decision to feature a vignette of luscious pomegranate on its label, while
2  omitting any representation of the "common" apple.

3      Pom has deposed all of the witnesses listed in Welch's initial disclosures
4  regarding product development and marketing of the White Grape Pomegranate
5  Product, including Marketing Director Karen Mitchell and Jenna Couzens and
6  Jennifer Peschier, the former employees who Welch's claimed had the most
7  knowledge regarding this product's marketing.  Despite the fact that Pom has
8  diligently pursued discovery from all of the persons whose titles would lead
9  reasonable persons to believe they might know about the decision to select the
10  "White Grape Pomegranate" name and the luscious pomegranate vignette, all such
11  discovery efforts have turned up empty.  *None of Welch's disclosed witnesses are*
12  *able to answer these basic questions regarding Welch's "intentions" despite the fact*
13  *that on its face, "White Grape Pomegranate" misleading moniker for a product*
14  *with only a miniscue amount of pomegranate and a much larger amount of apple*
15  *juice.*

16      Further, Welch's has failed to locate and produce key documents that would
17  likely contain its motivations regarding the White Grape Pomegranate product, such
18  as the "selling decks" to major customers regarding the product.

19      Accordingly, at this point, there is a *discovery void* regarding Welch's
20  motivations for marketing this particular product as it did.  As President of a
21  relatively small company, CEO Irwin would be likely to know—as a result of his
22  one-and-a-half years supporting and marketing this Welch's SKU—more
23  information than anyone else to date regarding his own company's motivations.  In
24  fact, Marketing Director Karen Mitchell testified at her own deposition that Welch's
25  senior management, *usually including the CEO*, signed off on the development of
26  new juice products at the time the White Grape Pomegranate product was
27  introduced.  (See Deposition of Karen Mitchell, pp. 60-61, Exh. "A" to Declaration
28  of Christopher Van Gundy.)

POM WONDERFULL LLC AND WELCH
FOODS, INC'S JOINT STATUS REPORT

{039349.1}

1    Under these circumstances, there is not "good cause" to block the deposition

2  of Welch's CEO as he is potentially a very relevant witness with first-hand

3  knowledge of information essential to the trial of this case.  See First Nat'l Mortgage

4  Co. v. Fed. Realty Inv. Trust, 2007 WL 4170548, at *2 (N.D.Cal.2007) (allowing

5  depositions of high-level executives *after* depositions of lower-level employees

6  suggested they might have at least *some* relevant personal knowledge); Google v.

7  Am. Blind & Wallpaper Factory, Inc., 2006 WL 2578277, at *3 (N.D.Cal.2006)

8  (allowing deposition of corporate founder after learning from 30(b) (6) witnesses

9  that he may have relevant first hand information).

10   **C.   IT IS LIKELY THE CURRENT CEO WOULD HAVE**
11   **RELEVANT, FIRST-HAND KNOWLEDGE CONCERNING**
12   **WELCH'S RECENT DECISION TO REPLACE ITS FORMER**
     **WHITE GRAPE POMEGRANATE PRODUCT WITH A NEW**
13   **PRODUCT THAT ALSO CONTAINS POMEGRANATE JUICE.**

14   Welch's may argue that CEO Irwin should not be deposed because he has

15  only occupied the CEO post since January 2009.  This argument would not be a

16  credible reason to block Mr. Irwin's deposition because *none* of Welch's witnesses

17  to date have been able to answer the essential corporate decision making

18  questions—regardless of how long those witnesses have been in their respective

19  corporate posts.  Presumably, the outgoing CEO would have briefed his successor

20  regarding the top-level decision making involved in each new product introduction.

21  Even if Welch's now *claims* this was not the case, Pom certainly has ample reason

22  to test these claims at deposition.

23   Moreover, Welch's recently made *another* corporate-level decision to replace

24  the subject White Grape Pomegranate product and introduce a *different product*—

25  named Blueberry Pomegranate Concord Grape.  This change was made during Mr.

26  Irwin's tenure as CEO.  Thus, CEO Irwin would necessarily possess the highly-

27  relevant information as to why Welch's decided to introduce a ***new*** juice with

28  "Pomegranate" in the name, rather than just shelving its efforts to market juices with

POM WONDERFULL LLC AND WELCH
FOODS, INC'S JOINT STATUS REPORT

{039349.1}

1  this particular exotic fruit.  CEO Irwin's testimony in this regard is of even *greater*

2  importance given the fact that Welch's has objected to designating a Rule 30(b)(6)

3  representative for any category that involves the Blueberry Pomegranate Concord

4  Grape product.[1]

5       *If* there truly is no one at Welch's who is able to provide the key information

6  about the reasons why the White Grape Pomegranate product was introduced, then

7  *at the very least*, Pom is entitled to CEO Irwin's recollection of the *new*

8  Pomegranate product.  Pom is absolutely entitled to have Welch's witnesses shed

9  whatever light there is to be shed on *any* Pomegranate product in Welch's product

10  line because the reason for selecting the new pomegranate product may lead to

11  discoverable information as to the product in question.  The deposition of Welch's

12  CEO should proceed for this independent reason, as well.

13  **IV.   CONCLUSION**

14       For all of the foregoing reasons, Pom respectfully requests that the Court

15  overrule Welch's objections to the deposition of its President and CEO, Brad Irwin,

16  and order that Mr. Irwin appear for his deposition forthwith on a mutually-

17  convenient date by the new discovery cut-off date of June 7, 2010.  If Mr. Irwin is

18  not sufficiently knowledgeable to be a proper Rule 30(b)(6) designee regarding the

19  introduction and marketing of Welch's new Blueberry Pomegranate Concord Grape

20  juice product, then Welch's should be ordered to produce an appropriate Rule

21  30(b)(6) designee regarding those topics, as well.

22

23

24  _____

[1] Independent of its motion to obtain Welch's CEO's deposition, Pom is entitled to
25  depose Welch's Rule 30(b)(6) designee regarding the introduction of the new
26  Blueberry Pomegranate Concord Grape juice product.  If that designee is Mr. Irwin,
then that would "kill two birds with one stone".  However, if Mr. Irwin does not
27  have in depth knowledge concerning the new product introduction, then Welch's
28  also should be required to produce a different deponent regarding those categories
set forth on Pom's amended Rule 30(b)(6) notice.

POM WONDERFULL LLC AND WELCH
FOODS, INC'S JOINT STATUS REPORT

{039349.1}

**THE STATEMENT OF WELCH FOODS, INC.**

1        Although the scope of discovery is broad, it is not unlimited.  *DR Systems,*

2   *Inc. v. Eastman Kodak Co.*, No. 08-669, 2009 WL 2973008, at *5 (S.D. Cal. Sept.

3   14, 2009).  When a party seeks to depose an official at the highest level or "apex" of

4   a corporation, the court may exercise its authority under the federal rules to limit

5   discovery.  *Abarca v. Merck & Co., Inc.*, No. 07-0388, 2009 WL 2390583, at *3

6   (E.D. Cal. Aug. 3, 2009)(internal citation omitted).

7        The "apex witness" rule applies to an official at the highest level of corporate

8   management where that "high-level decision maker is removed from the daily

9   subjects of litigation [and] has no unique personal knowledge of the facts at issue."

10  *Celerity, Inc. v. Ultra Clean Holding, Inc.,* No. 05-4374, 2007 WL 205067, at *3

11  (N.D. Cal. Jan. 25, 2007).  In deciding whether to prohibit such an apex deposition,

12  courts often consider: (1) whether the high-level deponent has unique, non-

13  cumulative knowledge of the facts at issue; and (2) whether there are other, less

14  burdensome discovery methods for obtaining the information.  *See id.*;

15  *WebSideStory. v. NetRatings, Inc.*, No. 06-408, 2007 WL 1120567, at *2 (S.D. Cal.

16  Apr. 6, 2007).  "When a high-level corporate executive lacks unique or superior

17  knowledge of the facts in dispute, courts have found that good cause exists to

18  prohibit the deposition." *WebSideStory*, 2007 WL 1120567, at *2; *see also Celerity,*

19  *Inc.*, 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007)("Virtually every court that

20  has addressed deposition notices directed at an official at the highest level or "apex"

21  of corporate management has observed that such discovery creates a tremendous

22  potential for abuse or harassment") (quoting *Mulvey v. Chrysler Corp.*, 106 F.R.D.

23  364 (D.R.I. 1985)); Fed.R.Civ.P. 26(b)(1).

24       Here, Pom has served a notice of deposition of Brad Irwin, the current CEO

25  of Welch's.  Pom has not made, and cannot make, the elevated showing required for

26  it to do so.  As CEO of Welch's, Mr. Irwin undeniably is an 'apex' witness.  Thus,

27  Pom must first establish what "unique or superior knowledge" Mr. Irwin possesses

POM WONDERFULL LLC AND WELCH
FOODS, INC'S JOINT STATUS REPORT

{039349.1}

that would be relevant to this case. *See DR Systems, Inc.*, 2009 WL 2973008, at *5 (citing *WebSideStory*, 2007 WL 1120567, at *2).  Pom cannot begin to make this showing.  To begin with, Mr. Irwin only recently joined Welch's from another organization.  His start date was February 16, 2009, which was after the Complaint in this case was filed on January 23, 2009.  He came to Welch's from the candy division of Cadbury.  Accordingly, he has no unique knowledge about the White Grape Pomegranate product at issue in this case.  Pom certainly has not identified a single witness who has pointed to Mr. Irwin as a knowledgeable witness.  He authored no document that Pom seeks to authenticate or learn about.  Because Mr. Irwin does not have any "unique, first hand, non-repetitive knowledge of the facts at issue in the case," he is an inappropriate deponent.  *See Celerity, Inc.*, 2007 WL 205067, at *3 (citing *WebSideStory, Inc.*, 2007 WL 1120567, at *3).

Pom's effort to take Mr. Irwin's deposition is merely the latest installment of Pom's assertion that discovery should be symmetrical.  This apparently flows from the fact that Welch's recently deposed the two heads of Pom Wonderful.  These two issues have nothing to do with one another.  Unlike the top executives of Pom Wonderful, Mr. Irwin:  (i) was not identified as a knowledgeable person in Welch's initial disclosures; (ii) was not identified in any interrogatory responses; and (iii) has not been named as a potential trial witness in this case.  Furthermore, Welch's repeats what it said on the record during the May 7, 2010 telephonic hearing:  Mr. Irwin will not be a trial witness.  Mr. Irwin's role could not be more distinct from that of Pom's top executives, and Pom's effort to depose him is sheer harassment.

Aside from notions of discovery "symmetry," Pom's only stated basis for seeking to depose Mr. Irwin is to question him about an entirely different product (Blueberry Pomegranate Concord Grape) that has never been at issue in this case.  Apparently Pom believes it can somehow impute whatever knowledge Mr. Irwin might have about the new product to Welch's regarding the White Grape Pomegranate product that is at issue in this case.

POM WONDERFULL LLC AND WELCH
FOODS, INC'S JOINT STATUS REPORT

{039349.1}

This argument is silly.  Even if discovery as to a new and different product were appropriate (and Welch's submits it is not and has filed objections to that effect), Pom still is not entitled to begin its search at the top of Welch's executive staff.  In other words, under the apex rule, Pom would still have to establish some unique knowledge on Mr. Irwin's part that Pom cannot obtain any other way.  Pom cannot make that showing.

Fed.R.Civ.P. 26(b)(2)(C)(iii) permits the court to limit the frequency or extent of discovery if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit."  This standard is met where a party seeks to depose a corporate executive with no personal knowledge of the facts.  *See Abarca*, 2009 WL 2390583, at *6-7; *Thomas v. IBM*, 48 F.3d 478, 483 (10th Cir. 1995)(barring deposition of corporate executive because he lacked personal knowledge); *Harris v. Computer Associates Intern., Inc.*, 204 F.R.D. 44, 46-47 (E.D.N.Y. 2001) (depositions of high-level corporate executives duplicative, cumulative, and burdensome where executives have no personal knowledge of the disputed events). Here, the negligible, or non-existent, value of Mr. Irwin's testimony is outweighed by the heavy burden the deposition would impose on him and on Welch's.  The deposition would subject Mr. Irwin to "annoyance, embarrassment, oppression, undue burden, or expense."  *See* Fed.R.Civ.P. 26(c).

Dated:  May 17, 2010                          ROLL LAW GROUP P.C.


By:____/s/ *Christopher G. Van Gundy*____
Christopher G. Van Gundy
Attorneys for Plaintiff
POM WONDERFUL LLC

Dated:  May 17, 2010                          GREENBERG TRAURIG LLP


By:_____/s/ *Daniell Newman*_____
Daniell Newman
Attorneys for Defendant
WELCH'S FOODS, INC.

9

POM WONDERFULL LLC AND WELCH FOODS, INC'S JOINT STATUS REPORT

{039349.1}