O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | | |
|---|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**        IN CHAMBERS (No Proceedings Held)

This matter is before the Court on Welch's Motion for Summary Judgment on its defense of unclean hands. For the reasons explained below, the Court DENIES the Motion.[1]

## I.   FACTS

The Court recited the pertinent facts of this case and Pom's allegations in its July 9, 2010 Order denying Welch's motion for summary judgment on Pom's sole remaining claim under the Lanham Act. The Court will recite only an abbreviated version of the facts here.

Plaintiff Pom Wonderful LLC ("Pom") produces, markets and sells the "Pom Wonderful" brand bottled pomegranate juice and various pomegranate juice blends. Defendant Welch Foods, Inc. ("Welch") markets and sells various bottled juices under the "Welch" brand. In 2006, Welch developed a juice blend it named "Welch's 100% White Grape Pomegranate" (hereinafter, "WGP"). The ingredient declaration on the WGP package label identifies the juices used in WGP, which are white grape, apple, and pomegranate juices (from concentrate), but does not does not disclose the percentage of any of these juices. *Id*.

On January 23, 2009, Pom filed a Complaint against Welch alleging claims for (1)

---

[1] Docket No. 88.

O

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

false advertising under the Lanham Act § 43(a), 15 U.S.C. § 1125(a); (2) false advertising under California's False Advertising Law ("FAL") Cal. Bus. & Prof. Code § 17500; and (3) unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq*.  As the Court discussed in detail in its July 9, 2010 Order, Pom's Lanham Act claim is based exclusively on Welch's use of the word "pomegranate" in the WGP product name and on the WGP product label.  *See* Compl. ¶¶ 23, 28; Pom's Opp'n to Welch's MSJ re: Lanham Act Claim at 3:25-28 ("Pom's complaint in this case alleges that the advertising for Welch's White Grape Pomegranate Juice is false and misleading to consumers because, while the name of the product contains the word 'pomegranate' and the label depicts pomegranates, the product contains very little pomegranate juice.").

On November 18, 2009, the Court dismissed Welch's counterclaims as to certain categories of Pom's advertising (specifically, those that Pom conceded amounted to "non-actionable puffery"), and on November 20, 2009, Welch voluntarily dismissed its remaining Counterclaims.  On December 21, 2009, this Court dismissed Pom's false advertising and unfair competition claims based on Pom's lack of standing to assert those claims.  On May 3, 2010, Welch filed a motion for summary judgment on Pom's Lanham Act claim.  On June 7, 2010, Welch filed another motion for summary judgment on its affirmative defense of unclean hands.  On July 9, 2010, the Court denied Welch's May 3, 2010 motion for summary judgment.  This order addresses Welch's June 7, 2010 motion for summary judgment on its unclean hands defense.

## II. LEGAL STANDARDS

### A. Legal Standard on a Motion for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The moving party bears the initial burden of demonstrating the absence of a "genuine issue of material fact for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  A fact is material if it could affect the outcome of the suit under the governing substantive law.  *Id.* at 248.  The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party. The moving party need not disprove the other party's case. *See Celotex*, 477 U.S. at 325. Thus, "[s]ummary judgment for a defendant is appropriate when the plaintiff 'fails to make a showing sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999) (citing *Celotex*, 477 U.S. at 322).

When the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment will be entered against the non-moving party if that party does not present such specific facts. *Id*. Only admissible evidence may be considered in deciding a motion for summary judgment. *Id*.; *see also Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255). But the non-moving party must come forward with more than "the mere existence of a scintilla of evidence." *Anderson*, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

Simply because the facts are undisputed does not make summary judgment

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

appropriate. Instead, where divergent ultimate inferences may reasonably be drawn from the undisputed facts, summary judgment is improper. *Braxton-Secret v. A.H. Robins Co.*, 769 F.2d 528, 531 (9th Cir. 1985).

### B. The Defense of Unclean Hands

The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). However, "[t]he unclean hands maxim is not a search warrant authorizing the defendant to probe into all the possible types of inequitable conduct ever engaged in by the plaintiff. Plaintiff's inequitable conduct is the basis for a valid defense only if it relates in some way to the subject matter in litigation." 6 McCarthy on Trademarks and Unfair Competition (4th ed. 2010) § 31:48. Additionally, past misconduct cannot form the basis for an unclean hands defense: "Plaintiff's position must be judged by the facts existing as they were when suit was begun, not by the facts existing in an earlier time. Defendant cannot dredge up inequitable conduct of plaintiff which had been discontinued for some time prior to suit." *Id.* § 31:55.

## III. DISCUSSION

Welch argues that Pom has been engaged in "precisely the same kind of conduct that, when [Welch] does it, Pom calls deceptive and misleading." Mot. at 1. The wrongful conduct of Pom that Welch alleges in support of its unclean hands defense is:

- Pom's failure to disclose that its 100% pomegranate juice product at one point contained elderberry;
- Pom's sale of juice blends that, at one point, contained juices other than those identified in the product name;
- Pom's failure to list "water" as an ingredient in its 100% pomegranate juice and juice blends, which contain approximately three-fourths water;
- Pom's obscuring of the term "from concentrate" on its bottles and in its advertisements;
- Pom's use of an advertisement that purports to show Pom's juice going

Case 2:09-cv-00567-AHM-AGR Document 299 Filed 08/25/10 Page 5 of 15 Page ID #:6735

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

straight from whole fruit into bottles (from "Tree to Bottle"), when in fact the juice goes through many more steps prior to being bottled.

### A. Certain Of Welch's Allegations of Pom's Misconduct Do Not Relate to The Same Conduct of Which Pom Accuses Welch.

Pom argues that the allegations that form the basis for Welch's unclean hands are not precisely the same type of conduct of which Pom accuses Welch, and therefore these allegations cannot form the basis for an unclean hands defense. Mot. at 5. Although "precise" similarity is not required—the bad faith must be "relative to the matter in which [the plaintiff] seeks relief," *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945)—the Court agrees that some of Welch's allegations are not sufficiently related to Pom's claims in the lawsuit.

In applying the unclean hands doctrine, the relevant inquiry is "not [whether] the plaintiff's hands are dirty, but [whether] he dirtied them in acquiring the right he now asserts, or [whether] the manner of dirtying renders inequitable the assertion of such rights against the defendants." *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (internal quotation omitted). *See also Pond v. Ins. Co. of N. Am.*, 151 Cal. App. 3d 280, 290, 198 Cal. Rptr. 517 (Ct. App. 1984) ("The [unclean hands] rule is qualified by the requirement that the party against whom the doctrine is sought to be invoked directly 'infected' the actual cause of action before the court, and is not merely guilty of unrelated improper past conduct.").

Factual similarity between the misconduct that forms the basis for an unclean hands defense and the plaintiff's allegations in the lawsuit is not sufficient. *See, e.g.*, *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 113 (S.D.N.Y. 2005); *Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 847 (9th Cir. 1987) ("To prevail . . . [e]quity requires that those seeking its protection shall have acted fairly and without fraud or deceit *as to the controversy in issue.*") (emphasis added). Rather, the "misconduct that forms the basis for the unclean hands defense [must be] directly related to plaintiff's use or acquisition of the right in suit." *Specialty Minerals, Inc.*, 395 F. Supp. 2d at 113.

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

As noted above, the crux of Pom's Lanham Act claim is that Welch misleads consumers to believe that its WGP product contains more pomegranate juice than it actually does, and that the WGP product in fact contains very little pomegranate juice. Thus, to prove unclean hands, Welch must demonstrate that Pom misleads consumers into believing its juice products contain more pomegranate juice than they actually do, or that its products misrepresent the amount of juice(s) in them.

Three of Welch's unclean hands claims do not appear sufficiently related to Pom's claims in the lawsuit: (1) that Pom deceives consumers by obscuring the term "from concentrate" on its bottles and in its advertisements; (2) that Pom's juice blends contain water, an ingredient which Pom does not disclose in the ingredient list;[2] and (3) that Pom uses an advertisement that purports to show Pom's juice going straight from whole fruit into bottles (from "Tree to Bottle"), when in fact the juice goes through many more steps prior to being bottled (including reducing the pomegranate juice to a concentrate, freezing it, and reconstituting it). The essence of these three claims is that through its advertising, Pom misleads consumers to believe its juices are not from concentrate. They are not directly related to Pom's claims that Welch misleads consumers into believing that its juice blend contains more pomegranate juice than it actually does by including the word "pomegranate" in the name and prominently depicting a pomegranate in the label. Welch argues that it need only establish that Pom deceptively names, labels, and advertises its juice products such that consumers are led to believe the products have characteristics which they do not. However, the unclean hands defense is not that broad. Rather, it can be applied "'only where some unconscionable act of one coming for relief has immediate and necessary relation to the equity that he seeks in respect of the matter in litigation.'" *TrafficSchool.com, Inc. v. Edriver, Inc*., 633 F. Supp. 2d 1063, 1084 (C.D. Cal. 2008) (unclean hands defense applicable where plaintiff sued defendant for registering domain name "dmv.org" such that consumers believed defendant's site to be affiliated with the Department of Motor Vehicles, and where defendant provided evidence that plaintiff registered similarly confusing domain names using "dmv" acronym). In *Campagnolo S.R.I. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663 (W.D. Wash.

---

[2] Welch has not controverted Pom's assertion that its juice blends do not contain more water than necessary to reconstitute the juice concentrates. Welch's argument regarding Pom's inclusion of water in its juice blends really is a variant of its theory that Pom misrepresents its juices as not being made from concentrate.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

2009) (cited by Pom), for example, the plaintiff's (Campagnolo's) claims were "based solely on representations made by [Full Speed Ahead or "FSA"] regarding [the stiffness-to-weight ratio of] Campagnolo's crankset, a bicycle component that Campagnolo manufactures and develops." *Id.* at 666. The court struck FSA's unclean hands defense that alleged Campagnolo falsely advertised the weight of its own cranksets. The court found such claims did "not directly relate to Campagnolo's allegations," stating that "FSA's claims would have to directly relate to Campagnolo's allegations regarding FSA's misrepresentations about Campagnolo's cranksets. That is the subject matter of this lawsuit." *Id*. Welch does nothing to distinguish *Campagnolo* aside from baldly stating that "Pom's only false advertising case *Campagnolo S.R.I. v. Full Speed Ahead, Inc.*, 258 F.R.D. 663, 666 (1009 [sic]) is readily distinguishable."

Pom's entire theory of how Welch deceives consumers is premised on its contention that consumers view pomegranate juice as "superior" to the "cheap" filler juices (*i.e.*, grape and apple) that comprise the majority of Welch's WGP product. Welch's allegations regarding Pom's marketing of its juice as not from concentrate, while falling within the broad category of "consumer deception," are premised on a different deception, different factual allegations, and different types of advertisements. The relationship between these allegations and Pom's claims is too tenuous to support an unclean hands defense.

A second reason why Welch cannot now assert the three claims described above as part of its unclean hands defense is that Welch did not plead them as part of its affirmative defense. "The key to determining the sufficiency of pleading an affirmative defense is whether it gives plaintiff fair notice of the defense." *Wyshak v. City Nat. Bank*, 607 F.2d 824, 827 (9th Cir. 1979). *See also* Schwarzer, Tashima, and Wagstaffe, Cal. Prac. Guide Fed. Civ. Pro. Before Trial (Rutter Group 2010) ¶ 8:1050 ("An affirmative defense must be pleaded with enough specificity or factual particularity to give plaintiff 'fair notice' of the defense being advanced."). "[I]t is not enough simply to refer to a statute or doctrine without supporting facts showing its applicability." *Id*. at ¶ 8:1050.10. Welch contends that its Fourth Affirmative Defense of unclean hands contains enough detail to give Pom fair notice of Welch's defense. Welch's Fourth Affirmative Defense states, in full:

> 52.    Any entitlement to relief for Pom is barred by the doctrine of unclean hands.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

> **POM has engaged in conduct similar or identical to that which it asserts against [Welch] by characterizing, advertising and promoting one or more of its own blended juice products by the names of juices not stated in their order of predominance by volume, and with juices omitted**, and has engaged in unlawful misconduct relating directly to the subject matter of its own allegations, including, but not limited to: (1) promoting the consumption of its POM Wonderful brand 100% pomegranate juice beverage product to consumers as having special benefits relating to diseases and health-related conditions, including for the prevention, mitigation and/or treatment of prostate cancer, and cardiovascular disease and other age-related medical conditions; (2) promoting the consumption of its POM Wonderful brand 100% pomegranate juice beverage product to consumers as an all-purpose health elixir that can prevent and/or delay the effects of advancing age, prolong youth, and prolong life; and (3) claiming in its advertising that its POM Wonderful brand 100% pomegranate juice beverage product is healthier than other beverages and has special antioxidant powers to protect health and prevent disease which are not found in other foods or beverages, including other 100% juice beverage products and the juice from other pomegranate fruit varieties.

Welch's RJN, Exh. 1 ¶ 52 (emphasis added). Welch contends that the quoted language placed in bold is "more than adequate to give Pom 'fair notice' of Welch's defense." Reply at 3. However, neither this quote, nor the entire paragraph makes any mention of Pom characterizing or implying that its product is not from concentrate. Accordingly, Welch's Answer is not sufficient to put Pom on notice that Welch intended to raise allegations regarding Pom's juice being "not from concentrate" as part of its affirmative defense.

Welch's remaining two claims—that (1) Pom's 100% Pomegranate Juice product contains undisclosed trace amounts of "elderberry," and (2) that Pom's "Pom Blueberry," "Pom Cherry," and "Pom Tangerine" products contain juices not disclosed in the label—bear a closer relationship to the claims Pom asserts against Welch, and were raised in its affirmative defense. However, as explained further below, even assuming these allegations are sufficiently related to Pom's claims, Welch has failed to persuade the Court that they are sufficiently "egregious" that it would be inequitable to permit Pom to proceed on its claims against Welch.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

### B. Welch's Argument that Pom Failed to Disclose That Its 100% Pomegranate Juice Contained Previously Contained Elderberry.

Welch contends that Pom's 100% Pomegranate Juice previously was made up of at least 1% elderberry juice concentrate. In support of this contention, Welch offers deposition testimony from Pom executives, who admitted that at some point starting in 2004 or earlier and continuing until Pom reformulated its juice in 2008, Pom's 100% Pomegranate Juice product contained elderberry juice. *See* Shackelford Decl., Exh. 1 (L. Resnick Dep. at 30:16-31:3) and Exh. 2 (Tupper Depo. at 12:4-23). Welch also offers evidence that when questioned by consumers what the "other natural flavors" were in the juice, Pom did not identify elderberry juice by name, and told customers only that the flavors were from "botanical sources." *See* Shackelford Decl., Exh. 4 (Tupper Depo. at 1:36:19-137:22).

Pom does not dispute that at one point its 100% Pomegranate Juice contained "trace amounts" of elderberry juice "for flavoring purposes." Malcolm Knight, Vice President of Operations, Product Development & Quality for Pom Wonderful testifies that until November 2008, the 100% Pomegranate Juice contained 0.2-0.4% elderberry juice.[3] Knight Decl. ¶ 3.

The Court finds that while Welch has offered undisputed evidence of Pom's misleading label, Welch has not demonstrated by clear and convincing evidence that Pom's conduct was "egregious." Welch has not offered evidence that Pom's deception was material, *i.e.* that it induced customers to purchase a product that they otherwise might not have purchased. Welch has not attempted to link Pom's inclusion of trace amounts of elderberry juice in its 100% Pomegranate Juice to consumer deception or harm. Its only evidence is that one customer called Pom asking whether "the plain pomegranate juice [has] any other ingredients in it" and another customer stated to a Pom customer service representative: "I noticed on the bottle it says pomegranate juice from

---

[3] Mr. Knight also testifies that the shelf life of the juice is 120 days. Shackelford Reply Decl., Exh. 5 (Knight Depo at 119:20-120:4). Thus, Welch is correct that the product was still available for purchase by consumers when Pom filed its complaint in January of 2009.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

concentrate with added natural flavors. This implies that it is not 100 percent pomegranate juice . . ." Shackelford Decl. (Reply), Exh. 4 (Tupper Dep. 136:19-137:22). This anecdotal evidence, while unrefuted, does not establish that any appreciable number of consumers were confused such that Pom's conduct could be deemed "egregious." Welch's failure to demonstrate the existence or extent of harm caused by Pom's deception precludes a finding that it would be inequitable for Pom to proceed on its claims. As the Ninth Circuit has explained,

> [T]he extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration [in applying the unclean hands defense]. [citation omitted] In patent cases a patent owner who has misused his patents in a manner contrary to the public interest is not denied relief in enforcing his patent rights if he can demonstrate that the consequences of misuse have been dissipated or 'purged.' [citation omitted] In trade-mark cases involving 'unclean hands' as a defense 'the courts will carefully weigh whether the representation actually leads to deception * * *.' [citation omitted]

*Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349-350 (9th Cir. 1963). *Accord Citizens Financial Group, Inc. v. Citizens Nat. Bank of Evans City*, 383 F.3d 110, 129 (3rd Cir. 2004) ("Because a central concern in an unfair competition case is protection of the public from confusion, courts require clear, convincing evidence of 'egregious' misconduct before invoking the doctrine of unclean hands. Furthermore, the extent of actual harm caused by the conduct in question, either to the defendant or to the public interest, is a highly relevant consideration.") (internal citations omitted).

"[W]hile the Ninth Circuit has recognized that the extent of the harm caused by the plaintiff's misconduct is 'a highly relevant consideration,' it has not held that a defendant asserting an unclean hands defense is *required* to demonstrate prejudice." *Lenz v. Universal Music Corp*. 2010 WL 702466 *7 (N.D.Cal. 2010) (emphasis added). Nonetheless, in *Lenz*, the court granted summary judgment/judgment on the pleadings to the plaintiff on Universal's unclean hands defense because Universal "[did not claim] that any of [plaintiff's] alleged bad acts have caused prejudice to its ability to defend the present action." *Id.*

In trademark cases, the Ninth Circuit appears to require evidence of actual harm in

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

order to prove unclean hands. *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866, 871 (9th Cir. 2002) (holding that the defendant must "show that plaintiff used the trademark to deceive consumers") (citing *Republic Molding*, 319 F.2d at 350). The unclean defense can bar recovery in trademark cases if the defendant can establish that the plaintiff used its own trademark (on which its lawsuit is based) to deceive consumers. In *Japan Telecom*, the district court had found that the plaintiff had unclean hands solely because its trade name was "geographically deceptively misdescriptive," but did not make a finding that any consumers had been deceived. On appeal, the Ninth Circuit found that this was error. The Ninth Circuit held that whether the plaintiff's trade name is misdescriptive is a question of fact that cannot be resolved on summary judgment if a genuine dispute of fact exists. *Id.* at 871.

Cases out of the Third Circuit following *Citizens Financial* (which cited *Republic Molding*) place a very high burden on defendants seeking to establish an unclean hands defense. For example, one court noted that harm to the public interest is a relevant consideration in determining whether the plaintiff has unclean hands, and that "to establish a defense of unclean hands, the defendant must allege that the defendant was injured 'as a result of the misconduct.'" *Merisant Co. v. McNeil Nutritionals*, LLC, 515 F. Supp. 2d 509, 531 (E.D.Pa. 2007). In that case, the court explained that "the defense of 'unclean hands' is not a mere 'they did it too' defense, but instead serves as a shield against a plaintiff's claims when the plaintiff has engaged in 'egregious misconduct.'" *Id.* at 532. The defendant in *Merisant* made the same type of argument that Welch makes here—that the plaintiff engaged in the same type of behavior of which the defendant stood accused, but that neither did anything wrong. The court rejected this theory of unclean hands.

Because Welch has offered no evidence of the egregiousness of Pom's actions, the Court is unable to conclude that it would be inequitable for Pom to proceed with its claims against Welch based on its prior inclusion of trace amounts of elderberry juice in its 100% Pomegranate Juice product.[4]

---

[4] Another argument Pom makes is that its product was and is labeled in strict compliance with applicable FDA regulations. Pom does not, however, explain how or why this fact (if true) would affect Welch's allegations of deception. Indeed, Welch has made the same argument regarding its own product name and label.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

### C. Welch's Argument that Pom Sold Juice Blends That Contained Juices Other Than Those Identified in the Product Name.

Next, Welch points to a number of other juice blends sold by Pom, and argues that these blends are deceptively named because prior to their reformulation in or around August 2008, they "contained other juices that were not named in the product's name." Mot. at 4. These juice blends include:

- "Pom Blueberry," which contained 50% pomegranate juice concentrate, 13% red plum juice concentrate, 11.5% clarified pineapple juice concentrate, 10% apple juice concentrate, 8% blueberry juice concentrate, 4% blackberry juice concentrate, and 2% wild blueberry juice concentrate, and under 1% each of various other natural flavors.

- "Pom Cherry," which contained 50% pomegranate juice concentrate, 24.5% red sour cherry juice concentrate and 5% dark sweet cherry juice concentrate, 7% apple juice concentrate, 5% clarified pineapple juice concentrate, 5% plum juice concentrate, and under 5% each of various other fruit concentrates and natural flavors.

SUF ¶¶ 8-10; 13-15.

Pom responds that the above-referenced percentages are percentages of *concentrate*, which is different than the actual percentage of juice once reconstituted.[5] Welch does not dispute this assertion. Nor does Welch dispute that even though Pom's formulation for Pom Blueberry contained 13% red plum juice concentrate, 11.5% clarified pineapple juice concentrate, and 10% apple juice concentrate, it contains more pomegranate juice by volume than any other juice, followed by blueberry juice. Pom's Statement of Add'l Material Facts ("SAMF") ¶ 16. Welch also does not dispute that Pom Cherry contains more pomegranate juice by volume than any other juice, followed by cherry juice. *Id.* ¶ 18. Pom's position appears to be that the percentage of reconstituted

---

[5] Pom defines "reconstitution" as "the process by which water is added to juice concentrate to make the juice serving-strength." Opp'n at 14 fn. 3.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

concentrate is the actual percentage of "juice" in a product, and thus the percentage of juice *concentrate* is not relevant.[6] According to Pom, because the Pom Blueberry and Pom Cherry blends contain more pomegranate and blueberry or cherry juice than any other juice (by percentage), Pom's juice blends are not deceptively labeled. Welch does not directly respond to this point. It states that Pom "misses Welch's point regarding its blends" and concludes that "Pom's conduct in including non-named juices in its blends is no different from what Welch's did." Reply at 13:3; 14:2-3. Pom, however, does not accuse Welch of not mentioning in the name of its juices every juice in the blend; it accuses Welch of placing in the name of the product a juice (1) that is not one of the primary ingredients of the product (by percentage), and (2) that only makes up a small percentage of the blend.

Pom also previously sold a "Pom Tangerine" product, which at one point contained 54.89% pomegranate juice concentrate, 42.91% clarified orange juice concentrate, 2% clarified tangerine juice from concentrate, and .1% each of two natural flavors.[7] SUF ¶ 21; Shackelford Decl., Exhs. 22-23. In response, Pom contends that this formulation was used in one production run,[8] and that it resulted from a particularly bitter tangerine harvest one season. SAMF ¶ 20. Pom also contends—and Welch does not dispute—that (1) within the juice industry, tangerines and oranges are "functional equivalents," (2) that approximately 10% of orange juice is actually comprised of tangerine juice (as well as other juices from sources such as clementines, mandarins, and murcotts or honey tangerines), (3) tangerine and orange juice are comparable in nutritional value, and (4)

---

[6] Pom explains (and Welch does not dispute) that concentrate is made by boiling the fruit's juice and eliminating the water from the juice. To reconstitute the juice, water is added back to the concentrate to make the juice "serving strength." SAMF ¶¶ 27-28.

[7] Welch also contends that Pom used another formulation for its Pom Tangerine juice blend that contained 32% orange juice and 10% tangerine juice concentrate. *See* Mot. at 7 fn. 3.

[8] The parties do not specify when the production run occurred, but the formulation's "issue date" is October 15, 2008. Shackelford Decl., Exh. 22. Pom contends (and Welch does not dispute) that it stopped using this formula "in 2008." Knight Decl. ¶ 5; SAMF ¶ 17.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |

orange juice concentrate is generally more expensive than tangerine juice concentrate and at the time of the one production run, orange juice concentrate cost twice as much as tangerine juice concentrate. SAMF ¶¶ 19-24.

The relevance of these undisputed facts is questionable. Pom argues that they show that its use of orange juice in the Pom Tangerine blend is unlike the conduct of which it accuses Welch, because (it claims) Welch uses "cheap filler juices" that are nothing like the expensive and distinct pomegranate juice that dominate Pom's product name and label. However, even though orange juice concentrate is more expensive than tangerine juice concentrate, and even though the two juices are "functional equivalents,"[9] consumers may still be confused and misled by the product's label, which could lure consumers away from products that do contain primarily pomegranate and tangerine juice. Nonetheless, the Court cannot conclude that Pom's labeling of its juice as "Pom Tangerine" is "egregious," because Welch has proffered no evidence that Pom's labeling of its Pom Tangerine juice blend misleads or confuses consumers. *Accord Merisant Co. v. McNeil Nutritionals, LLC*, 515 F. Supp. 2d 509, 532 (E.D. Pa. 2007) ("[T]he defense of 'unclean hands' is not a mere 'they did it too' defense, but instead serves as a shield against a plaintiff's claims when the plaintiff has engaged in 'egregious misconduct.'").

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Welch's Motion for Summary Judgment on its unclean hands defense. To the extent the evidence Welch proffers in support of this motion is admissible and relevant to its defense (or any other issue at trial), Welch will have the opportunity to present it then.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

| | : | |
|---|---|---|
| | Initials of Preparer | SMO |

---

[9] Neither party explains what it means by describing tangerine juice as a "functional equivalent" of orange juice.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-567 AHM (AGRx) | Date | August 25, 2010 |
|---|---|---|---|
| Title | POM WONDERFUL LLC v. WELCH FOODS, INC. et al. | | |